UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MELVIN PEREZ,

    Plaintiff,

v.                                          Case No. 5:13cv8/RS/CJK

KIM M. GRANT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the court upon defendant's motion to dismiss. (Doc. 25). Plaintiff has responded in opposition to the motion. (Doc. 33). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the court concludes that defendant's motion should be granted and this case dismissed for failure to state a claim upon which relief may be granted.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Okeechobee Correctional Institution. Plaintiff was confined at Jackson Correctional Institution ("Jackson CI") at the time of the events giving rise to this lawsuit. On May 1, 2013, plaintiff filed an amended complaint under 42 U.S.C. § 1983, naming

one defendant: Kim M. Grant, a correctional officer at Jackson CI. (Doc. 9, pp. 1-2). Plaintiff sues Grant in her individual and official capacities, (*id*., p. 10 ¶ 8), claiming she violated plaintiff's rights under the First and Fourteenth Amendments in July of 2012, when she threatened to issue and then issued plaintiff a false disciplinary report ("DR") to deter plaintiff from reporting her "unprofessional activity." (*Id*., p. 16). As relief, plaintiff seeks expungement of the DR, re-assignment to a job as a classification orderly, reimbursement of the costs of this lawsuit, nominal damages, an injunction "to stop Defendants from any type of retaliation for bringing this suit", and an order "allow[ing] [plaintiff] to supplement this suit to bring new claims against any other staff member at JCI for any reprisal taken in behalf of the Defendants without having to file additional suits or any staff members that approve transfers, job re-assignments or reprisal DR's." (*Id.*, p. 17).

Defendant Grant moves to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that (1) plaintiff's allegations fail to state a plausible claim of retaliation in light of the Eleventh Circuit's decision in *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011), (2) defendant Grant is entitled to Eleventh Amendment immunity on all official capacity damages claims, (3) plaintiff's request for perpetual leave to amend to raise claims arising after the filing of his original complaint must be dismissed because such claims would be barred by the exhaustion requirement of 42 U.S.C. § 1997e(a), and (4) plaintiff's request for injunctive relief is improper. (Doc. 25).

Plaintiff responds that the motion to dismiss should be denied and defendant Grant required to file an answer, because plaintiff's motion for leave to amend and proposed second amended complaint is pending. Plaintiff argues in the alternative

that if the court considers defendant's motion to dismiss, the court should decline to consider the attachments to the motion without first converting the motion to one for summary judgment. Plaintiff argues that so converted, defendant's motion must be denied because plaintiff's factual allegations and evidence establish, or at least raise genuine issues of material fact showing, that Grant's DR was motivated by retaliation. (Doc. 33).

## DISCUSSION

A. Preliminary Procedural Matters

Plaintiff's assertion regarding the pendency of a motion to amend is incorrect. Defendant's motion to dismiss was filed on November 22, 2013. (Doc. 25). On November 26, 2013, plaintiff filed a motion to amend his first amended complaint, accompanied by a proposed second amended complaint. (Docs. 27, 28). The court denied the motion to amend on December 3, 2013, and ordered that plaintiff's proposed second amended complaint not take effect. (Doc. 29). Plaintiff's motion for reconsideration (doc. 31) was denied on December 17, 2013. (Doc. 32). Plaintiff submitted his response to defendant's motion to dismiss on December 23, 2013. (Doc. 33). Plaintiff's motion to amend neither affects, nor precludes a ruling on, defendant's motion to dismiss.

Plaintiff's argument that the court cannot consider the attachments to defendant's motion to dismiss without first converting the motion to one for summary judgment is also without merit. In considering a motion to dismiss filed under Rule 12(b)(6), the court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The

documents attached to defendant's motion to dismiss are the record of plaintiff's July 19, 2012 disciplinary proceeding, which is the subject of this lawsuit and which is referenced repeatedly throughout plaintiff's amended complaint. (Doc. 25, Ex. A; *see also* Doc. 9). As the materials attached to defendant's motion to dismiss are central to plaintiff's claim, and as plaintiff does not challenge the authenticity of the materials (*i.e.*, plaintiff does not assert that the materials are not what they are purported to be – documentation of his July 19, 2012 disciplinary proceeding), the materials may be considered in ruling on defendant's motion. *See SFM Holdings, Ltd. v. Banc of Amer. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

  B. Rule 12(b)(6) Standard

  In considering a motion to dismiss filed under Rule 12(b)(6), the court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal for failure to state a claim when the allegations and properly considered extrinsic materials show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v.*

*Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle).

    C.    Allegations of Plaintiff's First Amended Complaint

Plaintiff claims defendant Grant violated his rights under the First and Fourteenth Amendments in July of 2012, when Grant threatened to issue and then issued a false DR to deter plaintiff from reporting Grant's misconduct with another inmate. (Doc. 9, p. 16). Plaintiff alleges the following facts in support of his claim. On July 10, 2012, at approximately 3:15-3:30 a.m., plaintiff got up from his bunk to use the restroom. (*Id*., p. 10 ¶ 10). Plaintiff's bunk is "in direct view of the officers' station." (*Id*., p. 11 ¶ 24). On the way back to his bunk, plaintiff went inside the dayroom to get a drink of water. (*Id*. ¶ 12). Plaintiff observed a prisoner standing at the officers' station glass, directly in front of where defendant Grant was sitting. The prisoner was masturbating and defendant Grant was watching the prisoner while playing with her hair and "lift[ing] her chest." (*Id*. ¶¶ 13-14). Plaintiff left the dayroom without getting water and returned to his bunk. (*Id*. ¶ 15). As plaintiff got back on his bunk, defendant Grant was looking at him. (*Id*.). Plaintiff went to sleep and arose at approximately 7:00 a.m., with the other inmates. Plaintiff walked by the officers' station and defendant Grant told him to "go to the flap." (*Id*., p. 11 ¶¶ 16-17). Plaintiff complied and Grant asked plaintiff what he had seen during his earlier visit to the dayroom. (*Id*. ¶ 17). Plaintiff responded "nothing." (*Id*. ¶ 18). Defendant Grant told plaintiff: "I can make it really hard on you, I know a lot of people here, and I also know where you work, so if you go up there running your mouth, I will make sure that you don't ever have a good job, stay in jail, and take all your gain-time." (*Id*. ¶ 20) (footnotes omitted). Plaintiff repeated that he had seen nothing.

Grant responded, "You better keep it that way." (*Id*. ¶¶ 21-22). The following day, July 11, 2012, defendant Grant was again assigned to plaintiff's dormitory. (*Id*. ¶ 23). Between 5:00 and 5:30 a.m., as plaintiff passed by the officers' station, defendant Grant "got up to the glass and was looking at Plaintiff." (*Id*. ¶ 26). Plaintiff went to his locker, got a cup and started walking toward the dayroom for water. As plaintiff walked past the officers' station he saw defendant Grant looking at him and talking on the radio. (*Id*. ¶ 27). Grant smiled at plaintiff, told him to "stand right here, I got something for you", and then began cursing at plaintiff. (*Id*. ¶ 28). Plaintiff told Grant that he did not say anything about what he had seen, and that he was not going to say anything so she did not have to place him in confinement. Defendant Grant responded, "you are going to jail." (*Id*. ¶¶ 29-30). Plaintiff begged Grant not to place him in confinement. (*Id*. ¶ 31). Grant continued cursing at plaintiff, so plaintiff returned to his bunk. Three or four sergeants arrived on the scene, and Grant pointed toward plaintiff's bunk. (*Id*., p. 12 ¶ 32). Defendant Grant told the sergeants that plaintiff was "gunning" her (masturbating while looking at her). (*Id*. ¶ 34). The sergeants took plaintiff to the Officer in Charge, Captain Bowen. (*Id*. ¶ 35). Plaintiff told Bowen that he did not gun Grant. Bowen called Grant and, after talking with her, told the officers escorting plaintiff to take plaintiff to confinement. (*Id*. ¶¶ 35-36). Bowen instructed defendant Grant to "write him a report" about the incident. (*Id*. ¶ 38). Grant's report was later issued to plaintiff as a charging disciplinary report ("DR"). (*Id*.). The DR charged plaintiff with Lewd or Lascivious Exhibition, violation code 1-6. (*Id*., p. 13 ¶ 50). Grant's DR alleged that plaintiff "was standing by the water fountain masturbating while looking directly at me." (*Id*. ¶ 51). Bowen ordered that plaintiff be placed in administrative confinement pending a disciplinary

hearing on the charge. Defendant Grant inventoried plaintiff's property. (*Id*., p. 12 ¶¶ 39-41). On July 17, 2012, Officer Tidwell provided plaintiff with a copy of Grant's charging DR. (*Id*., p. ¶ 50). A hearing on the DR was held on July 19, 2012. (*Id*. ¶ 52). Plaintiff was present. (*Id*. ¶ 54). The hearing team was comprised of Officer Hewett (Chairman), Captain Bowen and Officer Brown. (*Id*. ¶ 52). Bowen advised plaintiff to plead guilty, explaining that Officer Grant's statement would be believed over plaintiff's statement. (*Id*. ¶¶ 53, 55). Plaintiff pled not guilty and gave a verbal statement in which he denied engaging in the prohibited act. (*Id*. ¶¶ 54, 57-62). The disciplinary team found plaintiff guilty based on Officer Grant's statement, and sentenced plaintiff to 60 days in disciplinary confinement. (*Id*., p. 14 ¶ 63). Based on the foregoing allegations, plaintiff asserts that defendant Grant violated his First Amendment right to be free from retaliation for engaging in protected speech, by threatening plaintiff and writing him a false disciplinary report to deter him from revealing Grant's "unprofessional activity." (*Id*., p. 15 ¶¶ 84-90 and p. 16).

D. Dismissal under *O'Bryant v. Finch*, 637 F.3d 1207 (11th Cir. 2011).

The First Amendment prohibits a prison official from retaliating against an inmate for exercising his free speech rights, including the right to complain about the conditions of confinement and to file prison grievances. *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were the result of the inmate's having filed a grievance concerning the conditions of his imprisonment." *O'Bryant*, 637 F.3d at 1212 (quotation marks and brackets omitted). To establish causation, the plaintiff must show that the defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights.

*Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). An inmate who claims that the defendant's retaliatory conduct was writing a false disciplinary report cannot maintain that claim, however, if he is "convicted" of the behavioral violation alleged in the report after being afforded due process, and there is "evidence to sustain the conviction." *O'Bryant*, 637 F.3d at 1215.

In *O'Bryant*, an inmate brought a civil rights action against individual prison officials, alleging that the officials fabricated facts underlying disciplinary reports to retaliate against him for filing earlier grievances against prison staff. 637 F.3d at 1212. The defendants argued that Inmate O'Bryant was found guilty of the disciplinary charges based on evidence and after a hearing in which O'Bryant was afforded procedural due process. As a result, the defendants contended that O'Bryant could not establish a retaliation claim when he had been found guilty of the actual conduct underlying the disciplinary reports and that conduct violated prison rules. *Id.* at 1213. O'Bryant responded that he was not afforded due process and, in any event, he could still state a retaliation claim even if he had received adequate process. *Id.*

The Eleventh Circuit reviewed Supreme Court decisions concerning due process in prison disciplinary proceedings, namely *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). In *Wolff*, the Supreme Court outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting. *Id*. at 556, 94 S. Ct. at 2975 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").

As the Eleventh Circuit summarized:

> *Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id*. at 563–67, 94 S. Ct. at 2978–80.

*O'Bryant*, 637 F.3d at 1213. In regard to the third requirement, the Supreme Court in *Hill* held that due process merely requires that there be some evidence in the record that supports the decision of the disciplinary board. *Hill*, 472 U.S. at 455-56, 105 S. Ct. at 2774. The Supreme Court explained that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456, 105 S. Ct. at 2774. This is because "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." *Id*. (citations omitted).[1]

After setting forth the relevant principles, the Eleventh Circuit outlined the procedural history of Inmate O'Bryant's disciplinary proceedings, and concluded that the record demonstrated prison officials complied with the requirements of *Hill* and *Wolff*. *O'Bryant*, 637 F.3d at 1214-15. The court went on to hold: "[A]n inmate

---

[1]The Eleventh Circuit in *O'Bryant* recognized that because O'Bryant received only disciplinary confinement and did not lose any good time credits, it could be argued that he did not lose a liberty interest that triggered procedural due process requirements under either *Wolff* or *Hill*. The court declined to address the liberty-interest question, noting that it was discussing only O'Bryant's retaliation claim and only whether O'Bryant's conviction after being afforded due process barred his retaliation claim for allegedly false disciplinary charges. The same is true here.

cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *Id.* at 1215. The court explained:

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, O'Bryant has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, O'Bryant's retaliation claim fails.

*Id.* at 1215-16.

Here, the alleged retaliatory conduct is Grant's threatening to fabricate, and then fabricating facts underlying plaintiff's July 19, 2012 disciplinary report for Lewd or Lascivious Exhibition to deter plaintiff from speaking out against her. (Doc. 9, p. 16; Doc. 33, pp. 5-6). Despite the factual disputes concerning Grant's motive for issuing the DR, plaintiff's retaliation claim is foreclosed by *O'Bryant*. Plaintiff does not assert he was not afforded adequate due process during the disciplinary proceeding (doc. 9; doc. 33), and the record of plaintiff's disciplinary proceeding demonstrates that the hearing complied with due process standards. Plaintiff was given advance written notice of the charge by Officer Tidwell. (Doc. 9, p. 13 ¶ 50; Doc. 25, Ex. A, pp. 1-2). Officer Tidwell conducted an investigation, including

contacting the witnesses plaintiff identified. (Doc. 25, Ex. A, pp. 3-15). Plaintiff was present at the hearing and given the opportunity to present evidence. (Doc. 9, pp. 13-14 ¶¶ 58-62; Doc. 25, Ex. A, pp. 3-17). Plaintiff was provided the following written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action:

> Team decision based on information obtained from the investigation, the hearing, and Officer K. Grant's statement in Section 1 of the DR where it is reported on 7-11-12 at approximately 5:15 AM while assigned as A Dorm Housing Officer, Officer Grant observed Inmate Perez, Melvin DC#X11781, Bunk #A11-09U standing by the water fountain, masturbating while looking directly at Officer Grant. Inmate was allowed to make a statement during the hearing. Witness statements were read into evidence and considered. No other evidence was presented.

(Doc. 25, Ex. A, p. 17). Defendant Grant's eyewitness account provided "some evidence" that plaintiff actually committed the charged infraction. *See Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."); *Longstreth v. Franklin*, 240 F. App'x 264, 267 (10th Cir. 2007) (stating that an incident report satisfies the "some evidence" requirement of *Hill*); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (stating that disciplinary actions may be taken based only on a guard's report, if found credible, even when there is substantial evidence to the contrary). The disciplinary team relied upon facts in supporting their finding of guilt and did not reach an arbitrary and capricious decision. The minimum requirements of due process were met under the standards articulated in *Wolff* and *Hill*. Thus, plaintiff cannot maintain his claim that

the disciplinary report Grant wrote constituted retaliation. Because this ruling is dispositive of plaintiff's lawsuit, the court need not address defendant's remaining arguments.

Accordingly, it is respectfully RECOMMENDED:

1. That defendant's motion to dismiss (doc. 25) be GRANTED.

2. That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

3. That the Clerk be directed to close the file.

At Pensacola, Florida this 5th day of February, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).